**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  1:23CR657 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE J. PHILIP CALABRESE |
| vs. | : | |
| | : | |
| GARETH S. SCHAKEL, | : | **SENTENCING MEMORANDUM** |
| | : | |
| Defendant. | : | |
| | : | |

Mr. Gareth S. Schakel submits this sentencing memorandum requesting a sentence that is sufficient but not greater than necessary to accomplish the sentencing purposes. *See* 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Darin Thompson*
DARIN THOMPSON
Attorney at Law
Ohio Bar: 0067093
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: darin_thompson@fd.org

## **MEMORANDUM**

In late March of 2023, a minor from North Carolina went missing. Law enforcement knew the minor female had met an adult male online and was communicating with him through a platform called Element. That male was later identified Elijah Deandre Kennedy. Mr. Schakel was the host for the Element server. As part of their attempt to locate the minor, law enforcement spoke with Mr. Schakel at his home. (PSR at ¶ 4-6). Mr. Schakel, wanting to help find the missing girl, was fully cooperative. He voluntarily answered the agents' questions and gave law enforcement access to Element's server. (PSR at ¶ 4-6). Two days later, the minor was found with an armed Elijah Kennedy. *See* Exh. A: *United States v. Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 1: Complaint Affidavit, pp. 4-5. The searches of the server led to the discovery of the images and videos that are the basis of the instant case. (PSR at ¶ 11-15).

Further investigation revealed that Elijah Kennedy had met the minor on Omegle[1], a free online live-stream chatting service. Exh. A: *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 1: Complaint Affidavit, pp. 4-5. Kennedy provided the minor with access to the Element server. *Id*. Kennedy used this platform (along with others) to communicate with her, and to arrange the plan to pick her up from her parents' home that day in March. Once she was in the car, he showed her a gun and threatened to shoot her if she tried to run away. Exh. A: *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 1: Complaint Affidavit, p. 5. Kennedy drove her straight to his residence in Pennsylvania where he kept her isolated. She was able to call her mother one day while Kennedy was out of the apartment but told her mother she was too scared to try to leave because he had threatened to shoot her. *Id*. During the time she was held captive, Kennedy made her take naked

---

[1] Notably, Omegle shut down in November 2023 after numerous allegations that the site, popular with children, had been exploited by pedophiles.  *See* https://www.bbc.com/news/business-67364634

photographs of herself, "fully displaying her breasts and genital areas," and distributed those photos to a friend. *Id*. at pp. 5-6. Law enforcement also found evidence in the apartment that Kennedy engaged in sexual intercourse with the minor. *Id*. at p. 6 (noting law enforcement found "a used condom [on] the floor near the bed, pink handcuffs [on] the bed, a pink vibrator on the main table, [and] a used pregnancy test from inside a trashcan" along with "an empty box for Plan B ('the morning after pill').").

Kennedy was charged via complaint with kidnapping, transportation of a minor to engage in sexual activity, and manufacturing child pornography. Exh. A: *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 1: Complaint Affidavit, p. 1. The period for indictment was extended twice for a total of 90 days. *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 13: Order granting 60-day extension; Dkt. 17: Order granting 30-day extension. An indictment and superseding indictment were eventually filed and Kennedy was charged with three counts of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), two counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Exh. B: *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 56: Govt. Change of Plea Memo, p. 1. Kennedy pled guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement. In that plea, the parties agreed to a sentence within the range of 72 to 144 months. *Id*. at p. 2. The district court sentenced Kennedy to 72 months in prison, and five years of supervised release. Exh. C: *Kennedy*, E.D. Pa. No. 2:23-CR-355, Dkt. 67: Judgment, pp. 3-4.

The United States Government has treated Mr. Schakel differently than Kennedy, despite Kennedy's more egregious conduct. The government has charged Mr. Schakel with not only receipt and distribution of child pornography, but also with sexual exploitation of a minor. (R. 1:

Indictment). He was indicted directly and not provided with the same opportunity to negotiate a reasonable resolution during the complaint stage. Mr. Schakel asks this Court to consider the totality of the circumstances, including Kennedy's conduct and sentence, when imposing a sufficient-but-not-greater-than-necessary sentence.

## I.       Statutory and sentencing guidelines ranges.

Gareth Schakel has pled guilty to sexual exploitation of a minor, receipt and distribution of child pornography, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252(a)(2), and 2252A(a)(5)(B). (PSR at ¶ 1-2). He faces a 15–30-year prison term on count one, 5-20 years on count two, and 0-20 years on count three. (PSR at ¶ 77). The PSR calculates a total offense level, after acceptance of responsibility, of 41, and criminal history category III. (PSR at ¶¶ 22-58). This corresponds to a guideline range of 360 months to life. (PSR at ¶ 78).

## II.      The need to avoid unwarranted sentence disparities weighs heavily in favor of a downward variance.

Title 18 U.S.C. 3553(a)(6) requires consideration of the need to avoid unwarranted sentencing disparities. In the instant case, Elijah Kennedy's sentence provides a direct comparison which weighs heavily in favor of a downward variance. It is beyond dispute that Kennedy's conduct far exceeds that of Mr. Schakel. As detailed in the affidavit in support of Kennedy's complaint, he kidnapped a minor, transported her across state lines, engaged in sexual intercourse with her, produced child pornography which he distributed, held her captive, and threatened to shoot her if she attempted to escape. For his conduct, he received a sentence of only 72 months. This sentence is far less than half of the minimum sentence Mr. Schakel is facing for directing the creation of child pornography with the same minor.  Without attempting to discount his unlawful conduct, Mr. Schakel did not kidnap a minor, transport any minor across state lines, have sexual intercourse with a minor or commit any hands-on sexual offense, or threaten to shoot anyone.

Kennedy's sentence of 72 months is only 1/5th (or 20%) of the minimum of the 360-months-to-Life guidelines range that Mr. Schakel is facing, despite his cooperation with their investigation into the minor's abduction and sexual exploitation by Kennedy.

### III.     Mr. Schakel's history and characteristics weigh also in favor of lenience

Mr. Schakel has a history of mental and physical health problems which have accentuated the lasting negative effects of a neglectful and difficult childhood. Mr. Schakel grew up in an unstable and unsafe environment. He witnessed substance abuse in his neighborhood. When he was 11 or 12, he was taken from his home and put into foster care due to an unclean and unsafe home. (PSR at ¶ 62). He was emotionally and physically abused by the other children, starting as early as kindergarten. (PSR at ¶ 64). The bullying became so bad that he was taken out of public school in 6th grade and home schooled. Mr. Schakel also has suffered from significant physical and mental health problems. He was born with high blood pressure and asthma. (PSR at ¶ 67). At the young age of eight, he was diagnosed with Asperger's syndrome. (PSR at ¶ 69). He was later diagnosed with bipolar disorder, ADHD, and oppositional defiant disorder. (PSR at ¶ 69). At 10 years old he began experiencing arthritis and tendonitis. (PSR at ¶ 67). He suffered from pleurisy when he was 12 or 13. (PSR at para. 67). He is legally blind. (PSR at ¶ 68).

Due to his various health conditions, Mr. Schakel has been unable to work. He began receiving SSDI when he was 15 years old. (PSR at ¶ 74). He stopped receiving this benefit when his father passed away in 2022 and he began receiving military survivor benefits. (PSR at ¶ 74). According to the research of the Probation Officer and undersigned counsel, military survivorship benefits do not make a person automatically ineligible to receive SSDI benefits, so it is possible that he may have both available as sources of income to support himself upon release.

Now at 35 years old, Mr. Schakel continues to suffer from severe mental and physical health problems. He has adjustment disorder, autism, elevated blood pressure without hypertension, and asthma. (PSR at ¶ 68). He has difficulty recalling things and he believes he may have signs of early onset dementia. (PSR at ¶ 68). Together these issues made his transition into the community from state custody more difficult and contributed to his failure to be successful on supervision in the past. The transitional services provided by federal probation typically are more comprehensive than what is offered by the state. This will greatly increase Mr. Schakel's chance of success after his period of incarceration.

**IV.    Mr. Schakel is subject to the special assessment under 18 U.S.C. § 2259A but this Court must consider the factors in §§ 3353(a) and 3572.**

Mr. Schakel pled guilty to an offense under § 2252A(a)(5). Therefore, the special assessment of up to $17,000 applies under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. *See* 18 U.S.C. § 2259A(a)(1). Before imposing this assessment, however, the Court must consider the relevant § 3553(a) factors and the factors contained in § 3572. These factors include:

1. the defendant's income, earning capacity, and financial resources;

2. the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;

3. any pecuniary loss inflicted upon others as a result of the offense;

4. whether restitution is ordered or made and the amount of such restitution;

5. the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

18 U.S.C. § 3572(a). Additionally, the Court must only impose an assessment if it "will not impair the ability of the defendant to make restitution." 18 U.S.C. § 3572(b).

As discussed in detail above, Mr. Schakel is unable to work. He has been forced to rely upon government assistance for his whole life, first SSDI, then military survivorship benefits. When released he will have to reapply for these benefits. He will also be subject to a significant amount of restitution to the victims. Given Mr. Schakel's limited income and earning capacity, and likely large restitution obligation, he asks this Court not to impose an assessment under 18 U.S.C. § 2259A(a).

## V.       Conclusion

For the reasons above and those that will be argued at Mr. Schakel's sentencing hearing, Mr. Schakel respectfully requests that the Court impose a sentence below the sentencing guidelines range. A sentence below the range would be "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Darin Thompson*
DARIN THOMPSON
Attorney at Law
Ohio Bar: 0067093
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: darin_thompson@fd.org

7