IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR0657 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| GARETH S. SCHAKEL, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, David M. Toepfer, United States Attorney, and Jennifer J. King, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant, Gareth S. Schakel ("Schakel").  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence of 360 months, the low-end of the guideline range, is appropriate in this case.

On December 20, 2023, Schakel was indicted with one count of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a), one count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Indictment).  Schakel entered an open plea to the Indictment on January 8, 2026. (R. 31:  Presentence Report Investigation ("PSR"), Page 4). On Count 1, Schakel faces a statutory mandatory minimum term of imprisonment of 15 years up to 30 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100.  On Count 2, Schakel faces a statutory mandatory minimum term of imprisonment of five years up to

1

20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100. On Count 3, Schakel faces imprisonment up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100.

The guideline range is properly calculated in the PSR with a number of enhancements appropriately applied by the probation department. (R. 31: PSR, PageID 10). According to the PSR, Schakel's offense level is 41, and he is a criminal history category III. (Id., PageID 17). Based on the PSR calculations, Schakel's guideline imprisonment range is 360 months to life. (Id.). Since the maximum of the applicable guideline range is higher than a combination of all statutory authorized maximum sentences, the guideline term of imprisonment is 840 months. (Id.). Schakel does not object to any of the enhancements listed in the presentence report. (Id., PageID 27). The Government therefore requests that this calculation be adopted by the Court.

I.      **APPLICATION OF § 3553(A) FACTORS**

A.      NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Government refers to the factual description included in the PSR. (Id., PageID 4-7). Most significantly, Schakel produced child pornography on a server that he hosted. His actions show his sexual deviation is not just limited to trafficking child pornography but hosting the platform where he can personally reach out to minors and create additional child exploitation content for like-minded criminals.

Before the events in the underlying case began, Schakel was caught exploiting children online and failed to abide by the sex offender conditions set for him. (Id., PageID 11-12). He knew his activities were illegal and rather than abstaining from them, he became a host for other online predators and began chatting with minors.

Undeterred by his probation violation's 30-month prison sentence, Schakel was discovered by law enforcement after a minor was victimized in Pennsylvania via the Element server[1] that Schakel hosted. (Id., PageID 4). When the Adult Parole Authority and FBI arrived at Schakel's residence, he did not provide details about the Pennsylvania minor, but confirmed he was aware of her –presumably through chats on his server. (Id.). Schakel admitted to hosting the Element server, but when asked about sexually explicit content on the server, his response was, "You'll see." (Id.). Later, law enforcement discovered Schakel created his server to evade detection. Schakel bragged in a chat, "Barring police raiding my shit or I get arrested, I'm here to stay. I run own matrix server so I'm not going to be banned." (Id., PageID 7).

After the FBI seized and analyzed Schakel's servers and devices, agents located hundreds of files of CSAM. (Id., PageID 4). The examination of Schakel's devices was consistent with his previous online behaviors. His collection included the sexual abuse of infants and toddlers, the torture and rape of prepubescent children, bestiality, and his engagement in chats for the purpose of sharing child pornography. (Id., PageID 5-7). In chats, Schakel knew the CSAM files so well he referred to the series by name, such as "Jenny" or "April".[2] (Id., PageID 6). Schakel engaged with like-minded individuals sharing CSAM in the server rooms he created to be "invite only and (B) ABSOLUTELY POSITIVELY 100% MUST BE ENCRYPTED." (Id., PageID 7). Schakel boasted about training his "daughter to be ok with sex at around 7-8" and that he "really prefers girls around 10-12." (Id.).

---

[1] Element is not hosted by a company but rather enables users to create their own server and host their own communications.

[2] See the restitution requests for "Aprilblonde" aka "April" and "Jenny".

3

The most concerning evidence found in Schakel's chats were his conversations with minors.  Schakel encouraged teen girls to send him sexually explicit content, sent minors pictures of his penis, and detailed to minors how he would impregnate them. (Id., PageID 7). In a chat with another adult, Schakel bragged about one of his victims, "She's 15 and wants me to steal her and fuck her […] I'm over 30 and planning on duckin a 15yo slut to get her preggers before 16 and making her my IRL sex slave. And she wants it." (Id.).  He explained that he coached this minor to tell unvetted adults that she was 19 years old. (Id.). These are the same tactics that were observed between Schakel and the minor victim in Count One.

Schakel's chats with the minor victim in Count One lasted over a month and produced multiple videos and images of the minor engaged in sexually explicit conduct such as masturbation. (Id., PageID 5). In a chat with another adult, Schakel said of the minor, "…if I haven't been on video calls with her and made her take certain pics I'd thing [sic] she was a fed." (Id.).

Defense compares Schakel to Elijah Kennedy, the defendant whose own exploitation of a minor revealed the Element server's nefarious purpose. (R. 33: Def. Sentencing Memorandum, PageID 1986-89). Kennedy's 72-month sentence should not be a benchmark for Schakel's sentence as the two offenders have different circumstances surrounding their sexual exploitation and disparate criminal histories. Kennedy did not plea to any production offenses, nor did he have prior convictions for trafficking child pornography or failing to abide by sex offender registration requirements.  Further, Kennedy was not hosting the server both defendants used to exploit minors.

Schakel exemplifies the worst form of CSAM trafficking.  His actions show his sexual deviation is not just limited to collecting child pornography, but one where he must personally host and engage with minors and other offenders.

4

B.    HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Schakel grew up in Cleveland neighborhoods and suburbs. (Id., PageID 13). Although his upbringing was difficult, he has maintained a relationship with his mother and was able to build an engaged—albeit illegal—online community. (Id., PageID 13-14). He earned his GED and attended college classes while incarcerated. (Id., PageID 15). At 34 years old, Schakel has never been employed but is skilled in computer operating systems and has the technical abilities to host complex online servers. (Id., PageID 15-16). He has lived on social security disability income and military survivor benefits. (Id., PageID 16). Schakel suffers from multiple mental and physical conditions; however, there is no explanation or evidence of a causation between these diagnoses and the sexual desire for depictions of children being exploited, raped, and tortured.

In 2011, Schakel was sentenced to five years of state probation on nine counts of Pandering Sexually Oriented Matter Involving a Minor[3]. (Id., PageID 11). Under the modified categorical approach, the Government could not show Schakel's prior convictions for Pandering Sexually Oriented Matter Involving a Minor was a state offense relating to the possession, receipt, mailing, sale, distribution, shipment, or transportation of *child pornography*. The technical reading of the state indictment did not specify that Schakel was trafficking child pornography; although, the facts of his case showed he pandered material that depicted minors participating in sexual activity. Schakel therefore is not subject to the 25-year mandatory minimum term of imprisonment for his conviction of Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a). The elevation of the mandatory minimum sentence for repeat offenders is to deter defendants and protect the public from criminals like Schakel.

---

[3] Felonies of the second degree under to O.RC. § 2907.322(A)(2) and O.RC. § 2907.322(A)(1).

Schakel also has three 2016 convictions related to his compliance as a registered sex offender. (Id., PageID 11). In April 2016, he was convicted of Notice of Change of Address and Attempted Tampering with Records. (Id.). In November 2016, he was convicted of Attempted Verification of Current Residence. (Id., PageID 12). In both matters, he was sentenced to five years of probation, but Schakel violated probation in April 2021 and was sentenced to 30 months' custody. (Id.). Schakel was on state parole when arrested in the underlying case and when he produced child pornography.

C.    NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

In Bistline, the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence.[4] A sentence at or near the mandatory minimum would offend the seriousness of the offense and the impact on its victims. Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse."[5] The words of Congress and many courts echo those of the victims themselves. For many victims, the downloading of images is just as traumatic as the initial act of abuse. These victims express embarrassment of being depicted in these extremely vulnerable situations. They also express fear of being watched and subsequently recognized by people like Schakel who fixate on videos and images of them.

Schakel committed child exploitation offenses in the comfort and privacy of his own residence. He facilitated the abuse of other children and sought out minors to produce CSAM specifically for himself. He alone is responsible for his actions and the impact they have on the

---

[4] See United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012).
[5] 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).

6

child that sent him CSAM. Schakel amassed, sought out, and enticed minors to create child pornography. The sentence imposed should reflect the seriousness of Schakel's actions, promote respect for the law, and provide just punishment.

> D.     NEED FOR SENTENCE TO AFFORD ADEQUATE DETERRENCE

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.[6]  In United States v. Goldberg,[7] the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded, consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the Bistline Court reversed a district court that failed to see any importance in general deterrence.[8]  The district court stated, "general deterrence . . . will have little [if] anything to do with this particular case."[9]  The Sixth Circuit found "that [the district court's] statement is

---

[6] United States v. Irey, 612 F.3d 1160, 1206 (citing New York v. Ferber, 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); Osbourne v. Ohio, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.  Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.).
[7] 491 F.3d 668, 672 (7th Cir. 2007).
[8] See Bistline, at 767.
[9] Id.

7

inexplicable, and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'"[10]

## II.   MONETARY PENALTIES

### A.   FINE

The PSR report found Schakel is unable to pay a fine within the guideline range. (R. 31: PSR, PageID 17). The government would defer to the Court regarding a fine but would first request that full restitution be ordered to the identified victims.

Schakel is not subject to the $15,000 ($5,000 for each of the three counts in the Indictment) Additional Special Assessment under 18 U.S.C. § 3014. Due to the lapse in appropriations at the time of the plea agreement, the Government is not seeking this assessment and again requests that the restitution to the identified series bellowed be ordered to the victims.

### B.   THE AMY, VICKY, AND ANDY CHILD PORNOGRAPHY VICTIM ASSISTANCE ACT OF 2018 (AVAA) GENERALLY

The *Amy, Vicky, and Andy Child Pornography Victim Assistance Act* of 2018 (AVAA), enacted on December 7, 2018, made a number of changes to existing child pornography laws, specifically with regard to restitution. Specifically, the law: (1) provides that restitution must be ordered for all "child pornography trafficking offenses" of no less than $3,000 per victim; (2) imposes a new special assessment for those defendants who are convicted of certain child pornography related offenses; (3) permits victims of child pornography trafficking offenses to seek a one-time payment of $35,000 from a reserve fund; (4) amends the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2); and (5) adds 18 U.S.C. § 3509(m)(3), which allows victims, their attorneys, and any purported expert to access a victim's own sexually explicit

---

[10]   Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

images during any criminal proceeding.  Of particular importance in this case is the provision that sets a <u>floor</u> of $3,000 in restitution to the victims depicted in the Defendant's images that have submitted a claim for a monetary loss.

    C.      <u>RESTITUTION REQUESTS IN THIS CASE</u>

The National Center for Missing and Exploited Children (NCMEC) identified 321 image files and 166 video files from Schakel's collection that depicted children <u>previously identified</u> by law enforcement[11].  These identified images came from 76 separate series.  Of those, 14 victims have submitted requests for restitution in Schakel's case.

| Victim/Series | # of images/ videos | Restitution requested | Payable to: |
|---|---|---|---|
| "Aprilblonde" aka "April" | 2 images 2 videos | $10,000 | "Restore the Child in Trust for April" Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406. |
| "BestNecklace" aka "Maria" | 2 images 1 video | $10,000 | "Carol L. Hepburn I/T/F Maria" PO Box 17718, Seattle, WA 98127 |
| "HG1" aka "Eliza" | 1 image | $3,000 | "Jones Day in trust for Eliza", Jones Day, Attn: Andrew Bjorklund, 500 Grant Street, Suite 4500 Pittsburgh, PA 15219-2514 |
| "Jan_Socks2" aka "Savannah" | 2 images | $7,500 | "Carol L. Hepburn I/T/F Savannah", P.O. Box 17718, Seattle, WA 98127 |
| "Jan_Socks3" aka "Skylar" | 4 images | $7,500 | "Carol L. Hepburn I/T/F Skylar", P.O. Box 17718, Seattle, WA 98127 |
| "Jan_Socks4" aka "Sally" | 2 images | $7,500 | "Carol L. Hepburn I/T/F Sally", P.O. Box 17718, Seattle, WA 98127 |
| "JBN Flowers1" aka "Julie" | 2 images 1 video | $10,000 | "Restore the Child in Trust for Julie" Restore the Child, PLLC, |

---

[11] According to forensic reports and search warrant productions, Schakel received and distributed hundreds of images and videos of child pornography.  Thus, most of the children depicted in these files have yet to be identified.

|  |  |  | 2522 N. Proctor St., Ste 85, Tacoma, Washington, 98406 |
|---|---|---|---|
| "Jenny" | 180 images 23 videos | $10,000 | "Marsh Law Firm PLLC in trust for Jenny", Marsh Law Firm PLLC ATTN: Jenny PO Box 4668 #65135 New York, NY  10163-4668 |
| "Sparkling Velvet" | 2 images 3 videos | $7,500 | "Jones Day on behalf of SV" Jones Day c/o Sarah Gleason and Brian Hershman 110 North Wacker Drive, Suite 4800, Chicago, IL 60606 |
| "Sweet White Sugar" aka "Pia" | 7 images 2 videos | $7,500 | Deborah A. Bianco in trust for Pia P.O. Box 6503, Bellevue, WA 98008 |
| "Tara" aka "Sloane" | 10 images 8 videos | $10,000 | "Carol L. Hepburn I/T/F Sloane" PO Box 17718, Seattle, WA 98127 |
| "TubTime1" aka "Aaron" | 1 video | $3,000 | "Moore & Van Allen PLLC in trust for Aaron of TubTime1" Moore & Van Allen PLLC, Attn: Sarah Byrne, 100 N. Tryon Street, Suite 4700 Charlotte, NC 28202 |
| "Vicky" aka "Lily" | 2 images 9 videos | $10,000 | "Carol L. Hepburn I/T/F Lily" PO Box 17718, Seattle, WA 98127 |
| "RCA" aka "Alex" | 1 video | $5,000 | "Restore the Child I/T/F Alex" Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406 |

The Government contacted Schakel's counsel to determine if an amount of restitution can be agreed upon.  Should no agreement be reached, the Government would respectfully submit the requests above and ask that the amounts of restitution be awarded and in accordance with caselaw cited above.  At a minimum, each victim should be awarded at least the $3,000 minimum restitution award as required by statute.  The minor victim in Count 1 has not made a restitution request at this time for the production and proliferation of her image online.

10

Victim impact statements from 19 series have been provided to the Court. Again, the minor victim in Count 1 has not submitted a victim impact statement at this time.

## VI.  CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence within the sentencing guideline range.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Jennifer J. King
Jennifer J. King (OH: 0089375)
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Tel. No. (216) 622-3759
E-mail: Jennifer.King@usdoj.gov

11